Filed 4/16/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| GOLDEN STATE BORING & PIPE JACKING, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ASTALDI CONSTRUCTION CORPORATION et al., <br><br> Defendants and Respondents. | G062891 <br><br> (Super. Ct. No. 30-2021-01198252) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly A. Knill, Judge. Affirmed.

Law Offices of Timothy P. Creyaufmiller and Timothy P. Creyaufmiller for Plaintiff and Appellant.

Pierce Kavcioglu Espinosa & Cesar, Timothy L. Pierce, Tyler J. Cesar, and Aren Kavcioglu for Defendants and Respondents.

\* \* \*

The Orange County Transportation Authority (OCTA) awarded a contract to defendant OC 405 Partners Joint Venture (OC 405) to complete improvements to Interstate 405 in a design-build transportation project. OC 405 subsequently awarded certain subcontracting work to plaintiff Golden State Boring & Pipe Jacking, Inc. (GSB) under Public Contract Code section 6826.[1] The parties ultimately disagreed over the scope of the subcontract work and never executed a written subcontract. After OC 405 contracted with a different subcontractor, GSB initiated the underlying action seeking benefit of the bargain damages. GSB claimed, inter alia, that OC 405 did not comply with section 4107's substitution procedures before substituting GSB with another subcontractor. The trial court granted summary judgment in favor of defendants OC 405, Astaldi Construction Corporation (Astaldi), and OHL USA, Inc. (OHL) (collectively defendants). Among other things, the court held GSB was not entitled to the protections of section 4107 because it did not meet the requirements of section 4100 et seq.

On appeal, GSB contends it is entitled to all the protections of a subcontractor under section 4100 et seq. To justify its argument, GSB relies on the relationship between sections 6826 and 4107, OC 405's prime contract, and *Southern California Acoustics Co. v. C. V. Holder, Inc.* (1969) 71 Cal.2d 719 (*Southern California Acoustics*). We conclude the trial court did not err in finding section 4107's substitution procedures did not apply to OC 405's substitution of GSB. We accordingly affirm the judgment.

---

[1] All further statutory references are to the Public Contract Code.

FACTS

I.

STATUTORY BACKGROUND

A. *Section 4100 et seq.*

"The Subletting and Subcontracting Fair Practices Act, sections 4100 et seq. (the [Subcontracting Practices] Act), establishes a detailed mandatory framework for competitive bids on public works contracts." (*Golden State Boring & Pipe Jacking, Inc. v. Orange County Water Dist.* (2006) 143 Cal.App.4th 718, 721.) The Subcontracting Practices Act requires the general (or prime) contractor to list in its bid each subcontractor who performs work "in an amount in excess of one-half of 1 percent of the prime contractor's total bid . . . ." (§ 4104, subd. (a)(1).) Section 4107, which is central to this appeal, prohibits the prime contractor from substituting "a person as subcontractor in place of the subcontractor listed in the original bid" unless the awarding authority consents and a statutory ground for substitution exists. (§ 4107, subd. (a).) The statute also describes a process through which substitutions may be made. (§ 4104, subd. (a)(1).)

The requirements of the Subcontracting Practices Act stem from the Legislature's finding that "the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements often result in poor quality of material and workmanship to the detriment of the public, deprive the public of the full benefits of fair competition among prime contractors and subcontractors, and lead to insolvencies, loss of wages to employees, and other evils." (§ 4101.) "Bid shopping" involves "the use of the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids." (*Southern California Acoustics, supra*, 71 Cal.2d at p. 726, fn. 7.) "Bid

3

peddling" involves a subcontractor's attempt "to undercut known bids already submitted to the general contractor in order to procure the job." (*Ibid.*)

*B. Section 6826*

While the Subcontracting Practices Act generally applies to all public construction projects, section 6826 applies to subcontracts involving transportation design-build projects. The statute provides: "The transportation entity . . . may identify specific types of subcontractors that must be included in the design-build entity statement of qualifications and proposal. All construction subcontractors that are identified in the proposal shall be afforded all the protections of Chapter 4 (commencing with Section 4100) of Part 1 of Division 2." (§ 6826, subd. (a).) Before a design-build entity awards subcontracts "not listed in the request for proposals," it must comply with specific statutory requirements. (*Id.*, subd. (b).) Section 6826, subdivision (c), another statute central to this appeal, states: "Subcontractors awarded subcontracts under this chapter shall be afforded all the protections of Chapter 4 (commencing with Section 4100) of Part 1 of Division 2."

## II.

### THE PROJECT AND THE PRIME CONTRACT

OC 405 is a joint venture comprised of Astaldi and OHLA USA, Inc.[2] for the purpose of completing certain improvements to Interstate 405 (the Project). In 2016, OC 405 submitted its bid for the Project to the OCTA. GSB was not listed as a subcontractor in the original bid. The OCTA awarded the contract to OC 405, and they entered into a contract for the Project in 2017 for a total price of $1,217,065,000 (the Prime Contract).

---

[2] In its separate statement of undisputed facts, defendants identified a joint venture with OHLA USA, Inc., but the party in the trial court and on appeal is OHL.

4

Section 7.2.2 of the Prime Contract addresses OC 405's procurement of new subcontracts not identified in its initial proposal to the OCTA—i.e., a subcontractor that was not a "listed subcontractor." To procure any new subcontracts, OC 405 had to "use a competitive process that complies with the provisions of Public Contract Code section 6826 . . . ." Section 7.2.3 of the Prime Contract also stated: "Design-Builder shall not have the right to make any substitution of any Listed Subcontractor or Subcontractor selected pursuant to Section 7.2.2 except in accordance with the provisions of the Subletting and Subcontracting Fair Practices Act, Public Contract Code section 4100 et seq."

## III.

### GSB'S SUBCONTRACT BID

In response to a request for proposals from OC 405, GSB submitted a bid to perform a portion of the Project for $1,723,620 in 2020. GSB later received an e-mail from OC 405 congratulating GSB on being awarded the subcontracting work. The parties thereafter negotiated the terms of the subcontract but disagreed over the scope of the work and never entered into a written subcontract. As a result, OC 405 contracted with a different subcontractor.

## IV.

### GSB'S COMPLAINT

In June 2022, GSB filed the operative first amended complaint against defendants. The complaint alleged section 6826 and section 7.2.3 of the Prime Contract "contained . . . protections from substitution for the work awarded to" GSB. According to the complaint, OC 405 could not have substituted GSB with another subcontractor unless the substitution was in accordance with section 4100 et seq., which was referenced by section 6826

5

and section 7.2.3 of the Prime Contract. The complaint alleged defendants violated the latter provisions by making an unlawful substitution and sought damages for GSB's benefit of the bargain.

## V.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In December 2022, defendants moved for summary judgment seeking judgment in their favor on the complaint. Defendants argued GSB could not assert a claim for benefit of the bargain because: (1) there was never a contract between GSB and defendants; and (2) GSB did not qualify for protection under section 4100 et seq. as it was not a "listed subcontractor" and GSB's proposed price did not exceed one-half of 1 percent of OC 405's original bid for the Project—a threshold requirement under section 4104, subdivision (a)(1).

In opposition to defendants' motion for summary judgment, GSB argued it was protected by section 4100 et seq. and its claim was authorized by *Southern California Acoustics*.

## VI.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The court granted the motion for summary judgment, holding GSB's case did not fall within the parameters of *Southern California Acoustics*. Although GSB argued it had a right of action under section 6826, the court found *Southern California Acoustics* did not grant any right under the latter statute. Instead, *Southern California Acoustics* dealt with subcontractors listed in the original bid, and GSB was not a "listed subcontractor."

Regardless, the court explained section 6826 provides that subcontractors awarded subcontracts shall be afforded the protections of

6

section 4100 et seq. but GSB did not meet the requirements of the latter statute. Relying on section 4104, subdivision (a)(1), the court believed "subcontractors whose proposed work is in an amount in excess of ½ percent [*sic*] of the prime contractor's total bid qualify for protection." The court emphasized GSB's total bid did not exceed this threshold.

Finally, the court addressed section 7.2.3 of the Prime Contract, which prohibited a substitution of any subcontractor except in accordance with section 4100 et seq. The court held: "[U]nder the [P]rime [C]ontract, the analysis again leads back to . . . section 4100, et seq., which does not apply to [GSB] for the reasons explained." The court concluded defendants met their burden of showing GSB's action had no merit and GSB did not show a triable issue of material fact.

In January 2023, the court entered judgment in defendants' favor. GSB filed a timely notice of appeal.

## DISCUSSION

GSB contends the court erred in its interpretation of the relevant statutes. According to GSB, it was awarded a subcontract under section 6826, which entitled it to the protections of section 4107—i.e., defendants had to comply with the substitution steps set forth in section 4107 before hiring a different subcontractor. GSB also claims it is entitled to pursue an action for "loss of benefit of the bargain" because defendants did not comply with section 4107. We disagree.

### I.

#### STANDARD OF REVIEW

Summary judgment is warranted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v.*

*Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) A defendant making a motion for summary judgment has the initial burden of demonstrating "'that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to the action.'" (*Saw v. Avago Technologies Limited* (2020) 51 Cal.App.5th 1102, 1108.) If the defendant makes this initial showing, "'the burden shifts to the plaintiff to show that a triable issue of material fact exists with regard to that cause of action or defense.'" (*Ibid.*)

We review orders granting summary judgment de novo. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499.) We consider all the evidence presented by the parties (except for evidence which the trial court properly excluded), liberally construe the evidence in support of the party opposing summary judgment, and resolve all doubts about the evidence in that party's favor. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

II.

STATUTORY CONSTRUCTION

This appeal presents a question of statutory interpretation that appears to be one of first impression in California. Having found no California case addressing the interplay between section 6826, subdivision (c) and section 4107, we use established principles to guide our statutory interpretation.

"Our fundamental task in statutory interpretation, "'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." [Citation.] We begin as always with the statute's actual words, the "most reliable indicator" of legislative intent, "assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows

8

more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.”’” (*Thai v. Richmond City Center, L.P.* (2022) 86 Cal.App.5th 282, 288.)

As noted *ante*, section 6826, subdivision (c) states: “Subcontractors awarded subcontracts under this chapter shall be afforded all the protections of Chapter 4 (*commencing with Section 4100*) of Part 1 of Division 2.” (Italics added.) Section 4107, in turn, provides: “A prime contractor whose bid is accepted may not: [¶] (a) Substitute a person as subcontractor *in place of the subcontractor listed in the original bid*, except that the awarding authority, or its duly authorized officer, may, except as otherwise provided in Section 4107.5, consent to the substitution of another person as a subcontractor” in one of nine listed circumstances. (§ 4107, subds. (a)(1)–(9), italics added.)

GSB construes section 4107 as applying to restrict OC 405’s substitution of GSB, but this interpretation ignores the italicized phrase above, namely, “in place of the subcontractor listed in the original bid.” The statute also identifies nine circumstances that might justify substitution, and each of those nine circumstances reference a subcontractor listed in the original bid. (§ 4107, subds. (a)(1)–(9).) There is no dispute GSB was not listed in the original bid. (*JMS Air Conditioning & Appliance Service, Inc. v. Santa Monica Community College Dist.* (2018) 30 Cal.App.5th 945, 958 [“subcontractors listed in a public bid enjoy limited statutory rights”]; see *Golden State Boring & Pipe Jacking, Inc. v. Orange County Water Dist., supra*, 143 Cal.App.4th at pp. 727–728 [rejecting GSB’s interpretation of section 4108 because the interpretation omitted key statutory language].)

According to GSB, a requirement that it be a "'listed' subcontractor" renders section 6826, subdivision (c) meaningless because some subcontractors chosen under section 6826 are not "listed subcontractors" but are rather chosen after the design-build bid. This argument has some appeal. But even assuming section 4107 applies to subcontractors not listed in the original bid, the protections of section 4100 et seq. only apply to subcontracts with proposed values exceeding "one-half of 1 percent" of the prime contractor's bid price. Indeed, the Subcontracting Practices Act is clear that prime contractors must list subcontractors in the original bid if they exceed the "one-half of 1 percent" threshold. (§ 4104, subd. (a)(1).)

The prime contractors cannot substitute *those* subcontractors unless they comply with section 4107. (§ 4107, subd. (a).) If the original bid does not designate a subcontractor, the prime contractor cannot subcontract any portion of the work exceeding the "one-half of 1 percent" threshold "[o]ther than in the performance of 'change orders' causing changes or deviations from the original contract." (*Id.*, subd. (c).) Section 4109 similarly states: "Subletting or subcontracting of any portion of the work in excess of one-half of 1 percent of the prime contractor's total bid as to which no subcontractor was designated in the original bid shall only be permitted in cases of public emergency or necessity, and then only after a finding reduced to writing as a public record of the awarding authority setting forth the facts constituting the emergency or necessity."

Considering the entire context of the Subcontracting Practices Act, we are persuaded the substitution requirements under section 4107 apply where the subcontractor's proposed work exceeds the "one-half of 1 percent" threshold. As defendants note, it would be unduly burdensome to

10

require the prime contractor and awarding entity to submit and review substitution requests for every subcontract regardless of the value or size of work. (See *DeSilva Gates Construction, LP v. Department of Transportation* (2015) 242 Cal.App.4th 1409, 1420 ["section 4104 . . . deem[s] the work of a subcontractor performing less than one-half of 1 percent of the contract amount to be insufficiently significant to require disclosure"].) And the Subcontracting Practices Act "did not set out to create and does not focus on rights for subcontractors." (*JMS Air Conditioning & Appliance Service, Inc. v. Santa Monica Community College Dist., supra*, 30 Cal.App.5th at p. 958.) Instead, "the Act protects subcontractors only to the extent that *preventing bid peddling and bid shopping* might protect them." (*Ibid.*)

It also bears noting that section 6826, subdivision (c) references the entire statutory scheme of section 4100 et seq.: "[S]ubcontracts under this chapter shall be afforded all the protections of Chapter 4 (*commencing with Section 4100*) of Part 1 of Division 2." (Italics added.) Given this language, the Legislature certainly did not intend to disregard parts of the Subcontracting Practices Act or its qualifications. If, as GSB claims, the Legislature only intended to incorporate the substitution procedures under section 4107, it could have referenced that section. There is nothing to suggest the Legislature intended to change the Subcontracting Practices Act when it was incorporated into section 6826. Because GSB's planned scope of work did not meet the "one-half of 1 percent" threshold, the substitution requirements under section 4107 do not apply.

While GSB separately relies on section 7.2.3 of the Prime Contract, that provision incorporates section 4100 *et seq.* The analysis is therefore the same as above. Finally, *Southern California Acoustics* does not change our analysis. In that case, our Supreme Court held a "listed

11

subcontractor" who was wrongfully substituted under the Subcontracting Practices Act could maintain a private right of action against the prime contractor to recover the benefits of the terminated subcontract. (*Southern California Acoustics, supra*, 71 Cal.2d at p. 727.) The case did not concern the interplay between section 6826 and section 4100 et seq. or subcontractors selected after the original bid under section 6826.

For the foregoing reasons, the court did not err by granting summary judgment in defendants' favor.

DISPOSITION

The judgment is affirmed. Defendants shall recover their costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


SCOTT, J.